IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PROGRESSIVE MOUNTAIN
INSURANCE COMPANY,

    Plaintiff,

      v.

CHRISTOPHER A. OLIVERO, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-4775-TWT

## OPINION AND ORDER

This is an action for declaratory judgment. It is before the Court on Plaintiff Progressive Mountain Insurance Company ("Progressive")'s Motion for Summary Judgment [Doc. 38] and Turo, Inc. ("Turo"), Travelers Excess and Surplus Lines Company ("Travelers"), and Christopher Olivero's[1] Motion for Summary Judgment [Doc. 39]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment [Doc. 38] is GRANTED in part and DENIED in part as moot and the Defendants' Motion for Summary Judgment [Doc.39] is GRANTED in part, DENIED in part, and DENIED as moot in part.

## I.    Background[2]

---

[1] Olivero is not included in Turo and Travelers' motion, but he filed a separate brief to state that he "concurs with and supports in its entirety" their brief. (Olivero's Br. in Supp. of Defs.' Mot. for Summ. J., at 1). The Court will refer to Turo, Travelers, and Olivero collectively as the "Defendants."

[2] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

This case arises out of an insurance dispute following a motor vehicle accident. Olivero alleges in underlying litigation that Defendant Erion Tafa collided with his vehicle on June 3, 2022, while he was driving on Interstate 285 East in Fulton County, Georgia. (Pl.'s Statement of Undisputed Material Facts [Doc. 38-4] ¶ 1). Tafa was driving a vehicle owned by Defendant Marlon Horne at the time of the accident. (*Id.* ¶ 2). Tafa rented the vehicle from Horne for four days through a personal vehicle sharing program with Turo. (*Id.* ¶¶ 3(a)-3(b)[3]). The rental was made pursuant to Turo's Car Sharing Agreement. (*Id.* ¶ 3(b)). At the time of the accident, Turo had an insurance policy issued by Travelers. (Defs.' Statement of Undisputed Material Facts [Doc. 39-2] ¶ 18). Under that policy, Tafa is insured as a "guest." (*Id.* ¶ 19). Tafa was also the named insured on a Progressive policy that was effective at the time of the accident providing coverage to Tafa with respect to a 2017 Hyundai Elantra. (Pl.'s Statement of Undisputed Material Facts ¶ 5). Progressive filed the present action seeking declaratory judgment stating that its Personal Vehicle Sharing Program ("PVSP") exclusion as well as its Regular Use exclusion apply and preclude coverage. (Compl. ¶¶ 23-38). In the event that coverage is not entirely excluded, Progressive also seeks a declaration stating that the

---

[3] Two paragraphs in Progressive's Statement of Undisputed Material Facts are labeled as Paragraph 3. The Court will cite those paragraphs as 3(a) and 3(b) and maintain the enumeration of the other paragraphs as they are in the document.

Travelers policy provides primary coverage—contractually and statutorily—for the accident at issue. (*Id.* ¶¶ 39-66). The parties have filed cross motions for summary judgment.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.    Discussion

The Court starts by analyzing the PVSP exclusion in the Progressive policy. Then, the Court considers the Regular Use exclusion. Finding that the Progressive policy does not afford coverage for the underlying accident, the Court does not address the parties' priority arguments.

## A. PVSP Exclusion (Count I)

The Progressive policy excludes coverage for "bodily injury or property damage arising out of the use of any vehicle while being used in connection with a personal vehicle sharing program." (Pl.'s Statement of Undisputed Material Facts ¶ 8). Progressive argues that this bars coverage for the underlying accident under its policy. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 8). In response, the Defendants do "not dispute that the PVSP exclusion—on its face—would apply to the subject accident. [The Defendants] argue[] only that the PVSP exclusion is void as applied against drivers of shared vehicles pursuant to O.C.G.A. § 40-1-223." (Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 9). That statute is titled "Authorized insurers; permitted exclusions from coverage" and states:

> (a) An authorized insurer that writes motor vehicle liability insurance in this state may exclude any and all coverage and the duty to defend or indemnify for any claim afforded under a shared vehicle owner's motor vehicle liability insurance policy, including but not limited to:
>
> > (1) Liability coverage for bodily injury and property damage;
> > (2) Personal injury protection coverage;
> > (3) Uninsured and underinsured motorist coverage;
> > (4) Medical payments coverage;
> > (5) Comprehensive coverage; and
> > (6) Collision coverage.
>
> (b) Nothing in this part shall be construed to invalidate or limit an exclusion contained in a motor vehicle liability insurance policy, including any insurance policy in use or approved for use that excludes coverage for motor vehicles made available for rent, sharing, or hire or for any business use.

4

O.C.G.A. § 40-1-223. The Defendants point out that the statute permits the exclusion of "any claim afforded under *a shared vehicle owner's* motor vehicle liability insurance policy" but assert that it does not state that an insurer may exclude coverage for a shared vehicle *driver's* insurance. (Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J., at 11).

The Defendants assert that that omission means insurers are only permitted to exclude coverage under a shared vehicle owner's policy in the context of peer-to-peer car-sharing programs. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 11-12). Their argument goes as follows. At common law, parties to an insurance contract have a right to exclude coverage by express agreement. (*Id.* at 13). Thus, the fact that the Georgia legislature included this section re-asserting that right as to those insuring shared vehicle owners is evidence that the statutory scheme as a whole displaces the common law. (*Id.* at 13-14). If the Georgia legislature meant to keep the standard common law rule, then this entire section would be meaningless surplusage. (*Id.* at 14-15). Moreover, the Defendants say that the title of the statute further demonstrates the legislature's intent that this section is intended to be an exhaustive list of the "permitted exclusions from coverage." (*Id.* at 12).

The Court does not agree with this interpretation of the statute. As an initial matter, this is not how the rule against surplusage works. The rule is used to avoid interpreting one word or set of words in a statute to render other

word(s) in the statute meaningless. *See, e.g.*, *Hill v. Owens*, 292 Ga. 380, 383 (2013) ("'Treatment' is one of a number of enumerated topics concerning which the Board must adopt a set of legally-binding rules, and those topics also include 'assignment, housing, working, feeding, clothing, . . . discipline, rehabilitation, training, and hospitalization.' Reading 'treatment' as referring to every aspect of the broad topic of how inmates are behaved toward or handled would subsume the remaining enumerated topics, rendering them surplusage and essentially meaningless. Thus, the narrower meaning regarding various forms of the medical care of inmates is to be preferred."). It is not meant to deduce from the mere fact that a statute re-asserts a part of the common law that the legislature intended to abrogate other parts of the common law.

The only case that the Defendants provide to support that proposition is *Couch v. Red Roof Inns, Inc.*, 291 Ga. 359 (2012). The court there was determining whether the word "fault" in an apportionment statute included negligent and intentional acts or just negligent acts. *Id.* at 359. The court started by looking at the ordinary meaning of the word "fault," which favored including intentional acts. *Id.* at 361-62. Then, the court considered that the word came in the context of the phrase "negligence or fault." *Id* at 362. It determined that if fault just meant negligence, it would translate to say "negligence or negligence," which would violate the rule against surplusage.

*Id.* After that, it analyzed another apportionment statute that specifically excluded intentional torts from the definition and deduced that if the legislature wished to do the same in the statute at issue, it would have done so. *Id.* at 362-63. This all led the court to conclude that "fault" included intentional acts, and that conclusion was reaffirmed by a survey of case law from other states. *Id.* at 363-64. At that point in time, the court states, "[t]he existence of a common law rule against apportionment to intentional tortfeasors does not alter this interpretation." *Id.* at 364. It goes on to say:

> A statute does not need to expressly say, "this is intended to preempt the common law." The actual canon of statutory construction is "'that [statutes] in derogation of the common law . . . must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute.'" Because the ordinary meaning of the word "fault" as used in O.C.G.A. § 51-12-33 includes intentional torts, and the other language used in the statute reinforces that meaning, construing O.C.G.A. § 51-12-33 to apply to intentional torts requires no extension beyond its "plain and explicit terms."

*Id.* (citation omitted).

In other words, *Couch* used the ordinary tools of statutory interpretation to analyze the meaning of a word in a statute. It then determined that plain meaning should be followed even though it altered the common law rule. The Defendants flip this on its head and assert that the court concluded the statute displaced common law "[b]ecause the statute in question restated the common law rule of comparative fault." (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 13-14). The Court will not follow this misreading of *Couch* and

7

will instead analyze the text to discern if there is any evidence of an intent to invalidate exclusions against drivers of shared vehicles.

The Defendants assert, "[t]he statute states an insurer may only exclude coverage for a shared vehicle under the 'shared vehicle owner's motor vehicle liability insurance policy[.]'" (*Id.* at 12). Similarly, according to the Defendants, "[t]he title of O.C.G.A. § 40-1-223 clearly shows that the exclusions listed in the statute are intended to be the only 'permitted exclusions from coverage' for shared vehicles in peer-to-peer car-sharing programs." (*Id.*). Conspicuously, the word "only" is outside of the quotation marks of the statutory language provided in both cases. That is because that word (or any other similar word) is not written in the body or title of the statute. *See* O.C.G.A. § 40-1-223.

Instead, the Defendants' textual argument is based on what is not said rather than what is said. Namely, they contend that because the statute does not say that an insurance company "may exclude any and all coverage and the duty to defend or indemnify for any claim afforded" under a *shared driver's* insurance policy, that means that the legislature intended to void every exclusion to coverage for peer-to-peer car-sharing programs under any shared vehicle driver's policy. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 10-16). For starters, this argument does not strike the Court as persuasive on its own terms. As the Court just stated, the legislature did not include the word "only" in the statute, which it easily could have done if it wished to void exclusions in

8

shared drivers' policies. The Defendants provide no account for why the Court should care about one omission more than the other.

More importantly, there is textual support for the proposition that the omission of "shared driver's" was not meant to restrict what exclusions an insurance company could include in its policies. Subsection (b) of the statute states, "[n]othing in this part shall be construed to invalidate or limit an exclusion contained in a motor vehicle liability insurance policy, including any insurance policy in use or approved for use that excludes coverage for motor vehicles made available for rent, sharing, or hire or for any business use." O.C.G.A. § 40-1-223(b). The Defendants state that "subsection (b) applies only to those exclusions limiting coverage for shared vehicles 'made available for rent, sharing, or hire or for any business use' by the shared vehicle owner, which is not applicable in this case." (Defs.' Reply Br. in Supp. of Defs.' Mot. for Summ. J., at 7).

The only reason that the Defendants offer for why they believe it is not applicable comes in a footnote in their initial brief in support of its Motion for Summary Judgment and in their response brief in opposition to Progressive's Motion for Summary Judgment. There, they say, "[b]ecause there is no allegation that the subject vehicle was being used for a business purpose, subsection (b) of O.C.G.A. 40-1-223 is not applicable." (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 12 n. 1; Defs.' Br. in Opp'n to Pl.'s Mot. for Summ.

J., at 12 n. 3). However, the subsection is written in the disjunctive. Thus, it applies to insurance policies that either exclude coverage for motor vehicles made available "for rent, sharing, or hire" or exclude coverage for motor vehicles made available "for business purposes." O.C.G.A. § 40-1-223(b). It is undisputed here that the vehicle at issue was made available to the driver through a sharing program. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 15-16) ("Turo is unquestionably a peer-to-peer car-sharing program as defined by O.C.G.A. § 40-1-220(8) . . . The subject vehicle would therefore be deemed a 'shared vehicle,' with Tafa designated as the 'shared vehicle driver.'"); (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 3) ("The Parties agree (1) Turo is a 'peer-to-peer car-sharing program,' (2) the vehicle involved in the collision ('Subject Vehicle') was a 'shared vehicle,' (3) Marlon Horne ('Horne') was a 'shared vehicle owner,' and (4) Erion Tafa ('Tafa') was a 'shared vehicle driver' as contemplated by O.C.G.A. § 40-1-220, *et seq.*"). Thus, subsection (b) applies regardless of whether the vehicle was made available "for business purposes."

The Court therefore finds that the statute evinces no intent by the legislature to bar the exclusion at issue here. Accordingly, the Court will not interpret the statute as doing so. *See Catoosa Cnty. v. Rome News Media*, 349 Ga. App. 123, 133-34 (2019) ("[I]t is the job of the legislature, not the courts, to rewrite or revise statutes." (citations omitted)). Since the PVSP exclusion indisputably applies to the facts of this case and since that exclusion is not

10

void, the Court finds that the Progressive policy does not afford coverage for the accident at issue. The Court will grant Progressive's Motion for Summary Judgment and deny the Defendants' Motion for Summary Judgment as to Count I.

### B. Regular Use Exclusion (Count II)

Only the Defendants move for summary judgment on Progressive's claim for declaratory judgment related to the Regular Use exclusion. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 16-19). The Defendants' first contention is that this exclusion is void under O.C.G.A. § 40-1-223 for the same reasons argued above. (*Id.* at 16-17). The Court rejects the contention on the same grounds. The second argument is that the Georgia Court of Appeals has already held that the Regular Use exclusion may not be used to bar claims in this context. (*Id.* at 17-19). The Court finds this argument to be persuasive.

*Darden v. Progressive Mountain Ins. Co.*, 364 Ga. App. 600 (2022) involved a motor vehicle accident in which one driver was driving a rental vehicle. Progressive insured the driver of the rental car and argued that the accident was not covered because it fell within the Regular Use provision. *Id.* at 606. The court disagreed and held that the rental vehicle was covered as an "additional auto." *Id.* at 607. In reaching that conclusion, the court stated that "[t]he purpose of such a regular use provision is to allow for occasional or incidental use of other cars without the payment of an additional premium, but

11

to exclude the habitual use of other cars, which would increase the risk on the insurance company without a corresponding increase of the premium." *Id.* at 606 (quotation marks and citation omitted). By contrast, "the plain language of the 'additional auto' clause of the policy allows for a 30-day time period during which the policy holder may acquire another automobile that would otherwise be excluded under the regular use provision and have it insured to the same extent of the explicitly listed automobiles." *Id.*

Progressive argued that the vehicle did not qualify as an additional auto because the driver did not "own" it. *Id.* The court noted that the word "owner" was not defined in the policy and instead looked to Black's Law Dictionary's definition: "[o]ne who has the right to possess, use, and convey something. . . ." *Id.* at 607 (quoting BLACK'S LAW DICTIONARY, p. 508 (2nd pocket ed. 1996)). The Court went on to say:

> Under the limited terms of the oral agreement between Phun and Fandino, Fandino paid Phun weekly for exclusive use and possession of the Civic. He could use it for personal and job-related driving, and there is no evidence that another taxi driver could take the Civic from Fandino during the time period. Additionally, there is nothing in the limited terms of the oral agreement that prohibited Fandino from subleasing the Civic to another individual during the time period that he rented it from Phun.

*Id.* Because ambiguous insurance provisions are strictly construed against the insurer, the court held, "[a]lthough obviously limited, Fandino had at least some ownership interest in the Civic, which would have made the vehicle

insurable by Fandino under the additional auto provision." *Id.* (citations omitted).

The Defendants assert that this case "is directly on point" and that its holding "applies in equal force" here. (Defs.' Br. in Supp. of Defs.' Mot. for Summ. J., at 17-18). Progressive distinguishes the case because "unlike in *Darden*, the rented vehicle was not 'owned' by the renter" since "Tafa's agreement with Turo contained extensive terms and significant limitations." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J., at 7). Specifically, Progressive identifies prohibitions on permitting someone who is not an "Approved Driver" to drive the shared vehicle and on using the vehicle to carry persons or property for compensation. (*Id.*).

As in *Darden*, the Progressive policy here does not define the word "owner." (Progressive Policy, [Doc. 39-6], at 1 (using the word "owner" in normal typeface even though "[d]efined terms are printed in bold-face type")). The Court will likewise look to Black's Law Dictionary. The Dictionary's full definition of "owner" is "[s]omeone who has the right to possess, use, and convey something; a person in whom one or more interests are vested. • An owner may have complete property in the thing or may have parted with some interests in it (as by granting an easement or making a lease)." *Owner*, BLACK'S LAW DICTIONARY (12th ed. 2024).

As Progressive acknowledges, "[d]uring the rental period, Tafa had continuous, uninterrupted possession of the vehicle and could use it for his personal use as he saw fit." (Pl.'s Br. in Opp'n to Mot. for Summ. J., at 8). Moreover, while limited, there is no dispute that Tafa was permitted to convey the vehicle to other people, provided those people were "Approved Drivers." (*See* Turo Vehicle Use Policies, [Doc. 44-1], at 1). Thus, Tafa had at least some right to possess, use, and convey the vehicle during the period he rented the shared vehicle. Black's Law Dictionary makes clear that one need not possess all of the property interests at once to their fullest extent to be considered an "owner."

At the very least, this is sufficient to establish that the policy could be reasonably interpreted to say that Tafa "owned" the vehicle at the time of the accident. "Where a term of a policy of insurance is susceptible to two or more reasonable constructions, and the resulting ambiguity cannot be resolved, the term will be strictly construed against the insurer as the drafter and in favor of the insured." *Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 314 Ga. App. 110, 112 (2012) (citation omitted). Therefore, while it is also a reasonable interpretation of the policy that "owner" means having title, the Court will follow the reasoning in *Darden* and conclude that the shared vehicle qualifies for coverage as an "additional auto." The Court will accordingly grant the

14

Defendants' Motion for Summary Judgment as to Count II of the Complaint.[4]

### C. Contractual and Statutory Priority (Counts III and IV)

Progressive's claims for declaratory relief as to priority are necessarily pled in the alternative to its claims that its policy excludes coverage altogether. It makes little sense to discuss which policy is primary when one of them does not provide coverage at all. Consequently, the Court will not analyze the parties' arguments as to those counts and will deny their Motions for Summary Judgment as to Counts III and IV as moot.

### IV. Conclusion

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment [Doc. 38] is GRANTED as to Count I and DENIED as moot as to Counts III and IV. The Defendants' Motion for Summary Judgment [Doc. 39] is GRANTED as to Count II, DENIED as to Count I, and DENIED as moot as to Counts III and IV. The Clerk is directed to enter judgment in favor of the Plaintiff as to Count I, in favor of the Defendants as to Count II, and stating that the Plaintiff's alternative Counts III and IV are therefore moot.

SO ORDERED, this ___3rd___ day of February, 2025.


THOMAS W. THRASH, JR.
United States District Judge

---

[4] While the Court is granting summary judgment to the Defendants on Count II, that does not change the fact that coverage is still excluded pursuant to the PVSP exclusion.